IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-1665-RM-NYW

KENNETH OLSEN,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

## ORDER

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendant Owners Insurance Company's ("Defendant" or "Owners") Motion Pursuant to Fed. R. Civ. P. 35 (the "Motion"), filed January 31, 2019. [#50]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b) and the Memorandum dated February 1, 2019 [#51]. This court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, upon careful review of the Motion, the applicable case law, and the entire case file, I **GRANT** the Motion for the reasons stated herein.

## BACKGROUND

This litigation arises out of an insurance dispute between Plaintiff Kenneth Olsen ("Plaintiff" or "Mr. Olsen") and Owners. *See* [#1; #3]. On or about April 23, 2017, Plaintiff was involved in a traffic collision with a third party, Varejo Manzaneras ("Ms. Manzaneras"). *See* [#3 at ¶ 5]. Plaintiff sustained injuries because of the traffic collision, requiring medical treatment; Plaintiff alleges his injuries also prohibited from returning to work. *See* [*id.* at ¶¶ 10, 15-19, 26-27]. Mr. Olsen, through his employer at the time, was covered under Defendant's uninsured/underinsured motorist insurance policy. *See* [*id.* at ¶ 29].

On or about October 9, 2017, Owners gave permission to Plaintiff to accept Ms. Manzaneras's $25,000 policy limit. *See* [*id.* at ¶ 23]. Believing this money did not cover all his injuries and medical treatment, Plaintiff sought benefits from Owners. *See* [*id.* at ¶¶ 32-36]. Over the next several months, Plaintiff continued to request benefits or an update on the status of his benefits and provided medical bills to Owners, but to no avail. *See* [*id.* at ¶¶ 32-62]. Plaintiff then initiated this suit, originally filed in the Denver County District Court but removed to this court by Owners, asserting claims against Owners for breach of contract, unreasonable delay or denial of insurance benefits pursuant to Colo. Rev. Stat. § 10-3-1115, and bad faith breach of an insurance contract. *See* [*id.* at ¶¶ 69-83].

Relevant here, the Parties appeared before the undersigned for an informal discovery dispute conference on January 2, 2019, at which the Parties first raised Defendant's request that Plaintiff attend an independent medical examination ("IME"). *See* [#45]. That same day, this court issued a Minute Order holding that *Schultz v. GEICO Casualty Co.*, 429 P.3d 844 (Colo. 2018) did not preclude Defendant from requesting an IME as a matter of law, but that Defendant had not followed the proper procedures for requesting an IME, thereby prohibiting the undersigned from determining whether good cause existed to order an IME. *See* [#46]. The instant Motion followed. *See* [#50].

Now, Owners seeks an IME of Plaintiff, currently set for "March 21, 2019 with Dr. Kathy McCranie [(the "doctor")] at 6087 S. Quebec Street Suite 200, Centennial CO 80111." *See* [*id.* at 2]. Owners represents that the Parties have two issues that require court intervention: (1) the permissible scope of the IME and (2) the use of an intake questionnaire. *See* [*id.*]. This court provided Plaintiff the opportunity to respond by February 12, 2019. *See* [#53]. Mr. Olsen did not respond by February 12, but rather filed his Response on February 18, the date provided for

Owners' Reply. *See* [#56; #57]. This court struck Mr. Olsen's untimely Response because he had not moved for nor received an extension of time to file his Response, and directed Mr. Olsen that he could re-file his Response after filing a formal motion requesting an extension that satisfied Rule 6(b)(1)(B)'s excusable neglect standard and after a robust meet and conferral with Owners. *See* [#59]. To date, Mr. Olsen has not done so. Nonetheless, this court concludes that resolution of the Motion is appropriate presently. *See* D.C.COLO.LCivR 7.1(d). I therefore consider Defendant's arguments below.

## LEGAL STANDARD

Rule 35 of the Federal Rules of Civil Procedure provides that a court may order an IME of a party where the party's mental or physical condition "is in controversy." Fed. R. Civ. P. 35. Rule 35 requires an affirmative showing by the moving party that each condition as to which the examination is sought is really and genuinely in controversy and good cause exists for ordering each particular examination. *See Schlangenhauf v. Holder*, 379 U.S. 104, 118 (1964). "Good cause" indicates that the showing is more than mere relevance, and is not merely a formality. *Id.* Rather, the court weighs the need for information against the individual's right to privacy. *Id.* The decision to grant or deny a Rule 35 examination is committed to the sound discretion of the court. *See Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 362 (D. Colo. 2004). Because the "in controversy" and the "good cause" requirements often implicate the same factors, the court may consider both issues together. *Id.* "While Rule 35 should be construed liberally in favor of granting discovery, its application is left to the sound discretion of the court." *Id.* (internal citations omitted); *see also Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 322 (N.D. Ga. 2000) (noting that the "factors reviewed in determining 'good cause' often merge with those requirements necessary to find that a plaintiff's mental condition is 'in controversy'").

## ANALYSIS

As mentioned, the Parties do not dispute that Mr. Olsen's physical condition is in controversy. *See Stefansson v. Equitable Life Assurance Soc'y of U.S.*, No. 5:04CV40(DF), 2005 WL 2277486, at *4 (M.D. Ga. Sept. 19, 2005) (holding that an action for benefits withheld and penalties for bad-faith refusal to pay benefits placed the plaintiff's health in controversy). Instead, the Parties dispute the appropriate scope of the IME and the doctor's use of an intake questionnaire. *See* [#50 at 2]. I consider each issue in turn.

> ***Scope:*** Pursuant to Defendant's Notice of IME, Owners requests an IME
>
> entailing a physical examination of and inquiry into related medical matters appurtenant to the examination. The IME will not include imagery or other sampling/testing. It will address the injuries and medical conditions identified and/or referenced in the medical records disclosed in this matter and any other medical issues which [the doctor] deems medically relevant to the same.

[#50-1 at 6]; *see also* [#50 at 2-3]. Owners contends that Plaintiff objects to the final clause which allows the doctor to determine any other "medically relevant" medical issues, and seeks to limit the scope "to a layperson's understanding of the potential medical conditions at issue . . . [and] those areas of the body Mr. Olsen is claiming injuries for in this claim." [#50 at 3].

To start, the court agrees with Defendant that limiting the scope of the IME to a layperson's understanding contravenes the purpose of Rule 702 of the Federal Rule of Evidence. Rule 702 requires witnesses qualified as experts to retain certain knowledge, skill, experience, training, or education that enables them to offer opinions on matters outside the comprehension of lay witnesses. *See* Fed. R. Evid. 702. Thus, limiting the scope of the IME in such a way could jeopardize the doctor's ability to offer her "opinions within a reasonable degree of medical certainty." *See* [#50 at 5].

4

But it is not clear that Plaintiff's objection seeks to limit the scope of the IME to a layperson's understanding. In the correspondence attached to the instant Motion, Plaintiff's counsel raises concerns that the doctor may stray from the medical issues alleged in this action and inquire into prior medical issues. *See* [#50-1 5-6]. Indeed, Mr. Olsen's counsel does not use the term layperson, but rather contends that it is up to the court to determine what examination is relevant to this action. *See* [*id.* at 6].

Nevertheless, this court finds that the purported scope of the IME appears reasonably related to the medical issues Mr. Olsen asserted in this action. *See Arizona, Dep't of Law, Civil Rights Div. v. ASARCO, L.L.C.*, 844 F. Supp. 2d 957, 965 (D. Ariz. 2011) (holding that an IME directed towards the plaintiff's claims of severe emotional distress and its effects on her ability to remember events while employed did not exceed scope of order allowing IME). Further, the court finds unconvincing the assertion that permitting the doctor to address "any other medical issues which [the doctor] deems medically relevant to [those at issue]" will lead to an inquiry to irrelevant or unrelated medical conditions. *See Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 166 (N.D. Cal. 2013) (permitting in employment discrimination case the IME to cover topics related to the plaintiff's current feelings towards the defendant and its employees, including whether the plaintiff posed a threat to the defendant's employees); *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 196, 202 (N.D. Tex. 1995) (permitting the IME to cover "a full history of [the plaintiff's] personal life . . . to assess the particular symptomology in issue" in the plaintiff's intentional infliction of emotional distress claim). At bottom, Mr. Olsen provides no compelling reason for this court to limit the scope of IME. *See Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 363 (D. Colo. 2004) (refusing to limit the length and potential subjects addressed during the IME, because the court could not second-guess the professional judgment of the IME doctor); *Letcher v. Rapid City Reg'l*

*Hosp., Inc.*, No. CIV.09-5008-JLV, 2010 WL 1930113, at *6 (D.S.D. May 12, 2010) ("the court will not limit Dr. Dossa's exploration of the very issues [the plaintiff] herself has placed before the court."). And the Parties shall not construe this Order as prohibiting Mr. Olsen from challenging the doctor's opinions in a *Daubert* motion and/or motion *in limine* should he choose to do so.

***Intake Questionnaire:*** Defendant maintains that the doctor utilizes "a routine medical questionnaire of the sort used by nearly all (if not all) medical offices in the United States" for "every patient/examinee she sees[.]" [#50 at 6]. Defendant argues that Mr. Olsen's counsel has categorically refused this condition without a court order despite Owners offer to provide the questionnaire in advance for Mr. Olsen to complete (with or without his counsel). *See* [*id.*]. Defendant argues that the questionnaire is necessary to the doctor's IME. *See* [*id.* at 7]. I agree.

A "[p]laintiff must complete all reasonable paperwork and answer all reasonable questions about her medical history in the context of her Rule 35 examination." *Goggins v. State Farm Mut. Auto. Ins. Co.*, No. 3:10-CV-00826-J-20JB, 2011 WL 1660609, at *3 (M.D. Fla. May 3, 2011). Further, to "restrict a physician from questioning a patient during a physical examination unduly restricts the physician's ability to obtain the information necessary to reach medical conclusions." *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 626 (D. Kan. 1999) (brackets and internal quotation marks omitted). In the correspondence attached to the Motion, Plaintiff's counsel offers no reason for her unequivocal refusal to allow Mr. Olsen to complete any paperwork from the doctor. *See* [#50-1 at 2, 4, 6]. But "many courts have found that a review of the medical history assists the doctor in his or her evaluations." *Clark v. Palmer*, No. 207CV165FTM29SPC, 2008 WL 11334930, at *1 (M.D. Fla. Mar. 18, 2008). Thus, I find that requiring Mr. Olsen to complete the doctor's intake questionnaire is necessary to the IME. *See Jones v. Greyhound Lines,*

*Inc.*, No. 08-1185-MLB-DWB, 2009 WL 1650264, at **4-5 (D. Kan. June 12, 2009) (requiring the plaintiff to complete the IME doctor's standard patient questionnaire, because "an examining physician under Rule 35(a) must be allowed to ask the examinee such questions as are necessary to form an opinion about his condition and the cause of the alleged injury."). To the extent that Owners has previously agreed to provide the questionnaire to Mr. Olsen prior to the IME, it should do so no later than **March 14, 2019**.

## CONCLUSION

Based on the foregoing, **IT IS ORDERED** that:

(1) Defendant's Motion [#50] is **GRANTED**;

(2) Mr. Olsen shall appear for the IME currently set for March 21, 2019 with Dr. Kathy McCranie at 6087 S. Quebec Street Suite 200, Centennial CO 80111, at which Mr. Olsen shall complete all required paperwork, including the intake questionnaire; and

(3) The scope of the IME shall entail a physical examination of and inquiry into related medical matters appurtenant to the examination. The IME will not include imagery or other sampling/testing. It will address the injuries and medical conditions identified and/or referenced in the medical records disclosed in this matter and any other medical issues which the doctor deems medically relevant to the same.

DATED: March 1, 2019

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge