# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-1665-RM-NYW

KENNETH OLSEN,

      Plaintiff,

v.

OWNERS INSURANCE COMPANY,

      Defendant.

## ORDER

Magistrate Judge Nina Y. Wang

      This matter comes before the court on two motions:

      (1)      Plaintiff Kenneth Olsen's ("Plaintiff" or "Mr. Olsen") Motion to Compel Disclosure of Communications with Attorney Mr. Torrey ("Plaintiff's Motion to Compel"), filed April 26, 2019, [#70]; and

      (2)      Defendant Owners Insurance Company's ("Defendant" or "Owners") Motion to Compel Noneconomic and Impairment Damages Information ("Defendant's Motion to Compel"), filed April 26, 2019, [#71].

The undersigned considers the Motions pursuant to 28 U.S.C. § 636(b) and the Memorandum dated April 29, 2019 [#72]. This court concludes that oral argument will not materially assist in the resolution of this matter.[1] Accordingly, upon careful review of the Motions, the applicable

---

[1] Thus, the court **DENIES** Owners Insurance Company's Motion to Request Oral Argument on Plaintiff's Motion to Compel Disclosure of Communications with Attorney Mr. Torrey (ECF NO. 70) [#95].

case law, and the entire case file, I **GRANT IN PART and DENY IN PART** Plaintiff's Motion to Compel and **DENY** Defendant's Motion to Compel.

## BACKGROUND

This litigation arises out of an insurance dispute between Mr. Olsen and Owners. *See* [#1; #3]. On or about April 23, 2017, Plaintiff was involved in a traffic collision with a third party, Varejo Manzaneras ("Ms. Manzaneras"). *See* [#3 at ¶ 5]. Plaintiff sustained injuries because of the traffic collision, requiring medical treatment; Plaintiff alleges his injuries also prohibited from returning to work. *See* [*id.* at ¶¶ 10, 15-19, 26-27]. Mr. Olsen, through his employer at the time, was covered under Defendant's uninsured/underinsured motorist insurance policy. *See* [*id.* at ¶ 29].

On or about October 9, 2017, Owners gave permission to Plaintiff to accept Ms. Manzaneras's $25,000 policy limit. *See* [*id.* at ¶ 23]. Believing this money did not cover all his injuries and medical treatment, Plaintiff sought benefits from Owners. *See* [*id.* at ¶¶ 32-36]. Over the next several months, Plaintiff continued to request benefits or an update on the status of his benefits and provided medical bills to Owners, but to no avail. *See* [*id.* at ¶¶ 32-62]. Plaintiff then initiated this suit, originally filed in the Denver County District Court but removed to this court by Owners, asserting claims against Owners for breach of contract, unreasonable delay or denial of insurance benefits pursuant to Colo. Rev. Stat. § 10-3-1115, and bad faith breach of an insurance contract. *See* [*id.* at ¶¶ 69-83].

Relevant here, the Parties appeared before the undersigned for an informal discovery dispute conference on April 10, 2019, at which the Parties raised a host of issues regarding both Parties' production obligations in response to written discovery. *See* [#69]. As to the issues of Defendant's production of deemed privileged communication between its claims adjuster and its

in-house counsel and Plaintiff's production of noneconomic and impairment damages information, this court ordered further briefing on the matters. *See* [*id.*]. On April 26, 2019, the Parties filed the instant Motions to Compel. Plaintiff's Motion to Compel seeks production of approximately 48 documents that contain correspondence between Owners' claims adjuster Nicholas Zeman ("Mr. Zeman") and its in-house counsel Andrew Torrey ("Mr. Torrey") that Owners has withheld as privileged. *See* [#70; #83]. Defendant's Motion to Compel seeks production of information concerning Mr. Olsen's claimed noneconomic and impairment damages. *See* [#71; #84]. Because the Motions are now ripe, I consider each below.

## LEGAL STANDARDS

Pursuant to Rule 37(a)(1), a party may move for a court order compelling disclosure or discovery, and must certify that she "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). A motion to compel may include a party's failure to produce documents requested pursuant to Rule 34. *See* Fed. R. Civ. P 37(a)(3)(B)(iv). "The party moving to compel discovery must prove that the opposing party's answers are incomplete[,]" and the "party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Rule 26(b)(1)." *Tara Woods Ltd. P'ship v. Fannie Mae*, 265 F.R.D 561, 566 (D. Colo. 2010). Ultimately, "[t]he administration of the rule[] lies necessarily within the province of the trial court with power to fashion such orders [as] may be deemed proper to vouchsafe full discovery for the just, speedy and inexpensive determination of the lawsuit." *Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966).

## ANALYSIS

**I.     Plaintiff's Motion to Compel**

**A.     Applicable Law**

Because this is a diversity action, Colorado substantive law governs the scope and application of the attorney-client privilege. *See White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990) ("In a civil action based upon a state cause of action, state law controls the determination of privileges."). By contrast, "the work product privilege is governed by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (citation and quotation omitted).

Colorado has codified the attorney-client privilege in pertinent part as follows: "An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment . . . ." Colo.Rev.Stat. § 13-90-107(b). The law is clear that the attorney-client privilege inures to the benefit and protection of the client to allow a client to gain counsel, advice, or direction with respect to the client's rights and obligations confidentially. *See Mountain States Tel. & Tel. Co. v. DiFede ("DiFede")*, 780 P.2d 533, 541 (Colo. 1989).

The work product doctrine is reflected in Fed. R. Civ. P. 26(b)(3)(A), which generally protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for a party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The party seeking to invoke the attorney-client privilege or the work product doctrine bears the burden of establishing that it attaches.

Neither the attorney-client privilege nor the work product doctrine is absolute as either may be waived. The burden of proving such waiver rests upon the party seeking to overcome the privilege. *DiFede*, 780 P.2d at 542; *accord. H. ex rel. Holder v. Gold Fields Mining Corp.*, 239 F.R.D. 652, 655 (N.D. Okla. 2005) ("[T]he majority view is that the party claiming waiver has the burden of proof on that issue."). A waiver of the attorney-client privilege or work product doctrine may be either express or implied. A waiver may be express when a party affirmatively consents to disclosure of the information. *See, e.g., In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (explaining that a client may waive the attorney-client privilege by disclosing privileged communications to a third-party; noting, "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." (citation and internal quotations omitted)); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) ("The work-product privilege may be waived by the voluntary release of materials otherwise protected by it." (citation and quotation omitted)). Waiver may also be implied through conduct. *See, e.g., People v. Madera*, 112 P.3d 688, 691 (Colo. 2005) ("Courts have found implied waiver of the attorney-client privilege when a defendant places the allegedly privileged communication at issue in the litigation, because 'any other rule would enable the client to use as a sword the protection which is awarded him as a shield.'" (citations omitted)).

Unlike the attorney-client privilege, work product immunity is not automatically waived by any disclosure to a third party. *In re Sealed Case*, 676 F.2d 793, 802–10 (D.D.C. 1982). The general standard for determining whether protected work product must be disclosed is where (1) the materials are otherwise discoverable under Rule 26(b)(1); and (2) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3). If disclosure of work product

is ordered by the court, the court must protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation. Fed. R. Civ. P. 26(b)(3)(B).

In the context of insurance claims and investigations, "[n]ot every document drafted by counsel or every communication with counsel is protected by the attorney-client privilege." *Hurtado v. Passmore & Sons, L.L.C.*, No. 10-cv-00625-MSK-KLM, 2011 WL 2533698, at *4 (D. Colo. June 27, 2011) (citing *Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Court For City & Cty. of Denver*, 718 P.2d 1044, 1049 (Colo. 1986) [hereinafter *Nat'l Farmers Union*]). "For example, the attorney-client privilege does not protect the results of a factual investigation conducted by counsel relating to the origination of an insurance policy and the validity of a claim." *Colo. Mills, LLC v. Philadelphia Indem. Ins. Co.*, No. 12-cv-01830-CMA-MEH, 2013 WL 1340649, at *3 (D. Colo. Apr. 2, 2013) (citing *Nat'l Farmers Union*, 718 P.2d at 1048-49); *accord Cornhusker Cas. Co. v. Skaj*, No. 11-cv-110-S, 2012 WL 12541136, at *2 (D. Wyo. Apr. 5, 2012) (holding the work product doctrine did not protect disclosure of the insurer's investigative file, because doing so "would allow an insurance company to insulate all investigative materials generated in every case involving serious injuries long before any coverage decisions are made or threats of litigation arise."). Indeed, "if a lawyer is acting in an investigative capacity, and not as a legal counselor, with reference to whether an insurance claim should be paid, then neither the [attorney-client] privilege . . . nor the work product privilege protects communications from a lawyer to an insurance carrier." *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130 (Colo. App. 1998) (citing *Nat'l Farmers Union*, 718 P.2d at 1044); *accord Smith v. Marten Transp., Ltd.*, No. 10-cv-0293-WYD-KMT, 2010 WL 5313537, at *2-4 (D. Colo. Dec. 17, 2010) (holding the neither the

attorney-client privilege nor work-product doctrine applied to communications by an attorney acting as a claims investigator regarding a claim investigation or communications with a witness).

Typically, claim investigations arising in the first-party context, like the claim at issue here, are "made in the ordinary course of business and are discoverable[.]" *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993) ("When an insured presents a first party claim, he is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes him a duty to adjust his claim in good faith. There is no initial contemplation of litigation."). Indeed, the roles of claims handler and attorney are not mutually exclusive. *See W. Nat'l Bank of Denver v. Emp'rs Ins. Of Wausau*, 109 F.R.D. 55, 57 (D. Colo. 1985) (noting that "investigations by a person who is an attorney but acting in the capacity of an investigator and adjustor for the insurance company" prepares an investigative file in the ordinary course of the insurer's business). The mere fact that an attorney is involved in a communication or drafting does not automatically render that communication or document subject to the attorney-client privilege or work product doctrine. *See Perez v. Alegria*, No. 15–MC–401–SAC, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015) (rejecting a blanket privilege objection for the basis for prohibiting his deposition or document discovery when the attorney was also a fact witness); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05–2164 MLB–DWB, 2007 WL 625809, at *6 (D. Kan. Feb. 23, 2007) (observing that privilege does not necessarily attach when an attorney also performed duties as a consultant involved in competitive business activities and decision-making).

To the extent such communications are protected by the attorney-client privilege, courts consider whether (1) the information was provided by agents of the corporate client "to counsel acting as counsel" at the direction of supervisors; (2) the information was necessary for the

provision of legal advice; (3) the agents were aware that their communications were made for the purpose of counsel rendering legal advice to the corporate client; and (4) the communications were treated as confidential. *See Bonanno v. The Quizno's Franchise Co.*, LLC, No. 06-cv-02358-WYD-KLM, 2008 WL 1801173, at *3 (D. Colo. Apr. 18, 2008) (citing *Nat'l Farmers Union*, 718 P.2d at 1049 (discussing *Upjohn Co. v. United States*, 449 U.S. 383, 394–95 (1981))). Accordingly, the nature of the services rendered by Owners' attorneys to Owners at any given time drives whether the work product doctrine or attorney-client privilege attaches, not a particular chronology of events. *See Church Mut. Ins. Co. v. Coutu*, No. 17-CV-00209-RM-NYW, 2018 WL 2388555, at *5 (D. Colo. May 25, 2018).

### B.      Application

Mr. Olsen seeks production of several claim notes that contain communications between Mr. Zeman and Mr. Torrey, and which Owners has withheld as attorney-client privileged or protected by the work-product doctrine. Mr. Olsen contends that Mr. Zeman consulted Mr. Torrey in the ordinary course of Owners' claim-handling process and thus Owners must produce communications that do not seek legal advice but rather discuss the handling of Mr. Olsen's insurance claim. *See* [#70 at 6-7; #83 at 2-3]. Mr. Olsen argues that although Mr. Torrey is Owners' in-house counsel, he did not always provide Mr. Zeman with legal advice, and at times acted as a claim-handler, i.e., authorized independent medical examinations or settlements. *See* [#70 at 6-8; #83 at 2-5]. According to Plaintiff, those communications where Mr. Torrey assisted Mr. Zeman in the handling of Plaintiff's insurance claim are not subject to the attorney-client privilege or work-product doctrine. *See* [#70 at 6-8; #83 at 2-5].

Owners counters that the communications at issue are subject to the attorney-client privilege and work-product doctrine because "Mr. Zeman was generally advised to seek legal

counsel from Mr. Torrey if he had questions about whether his investigation of a suspicious claim would result in bad faith liability for Owners[.]" [#80 at 5]. According to Owners, it is immaterial whether Mr. Zeman contacted Mr. Torrey during the claim-handling process, as the communications concerned limiting Owners' liability in any subsequent litigation between Mr. Olsen and Owners. *See* [*id.* at 6-9].[2] That is, "communications by an attorney that seem to 'fall within the responsibilities of file handler' are actually shrouded by this ever-present threat of liability for bad faith claims handling." [*id.* at 7]. Finally, Owners argues that the work-product doctrine also shields the Messrs. Zeman and Torrey's communications because the threat of litigation arose "immediately" given the alleged lack of medical records and Mr. Olsen's counsel who "boasts an active practice in bad faith breach of insurance contract cases," and Mr. Olsen has not demonstrated a substantial need for the disclosure. *See* [*id.* at 10-11].

### i.     Attorney-Client Privilege

Though disagreeing as to its application, the Parties agree that the court's inquiry focuses on the substance of the communication between Mr. Zeman and Mr. Torrey. Indeed, the touchstone of the attorney-client privilege is that legal advice is sought and exchanged. The privilege does not attach when an attorney is acting in a different capacity, i.e., when an attorney

---

[2] Though Owners asserts that Mr. Olsen seeks to establish a categorical rule that any communication between a claim adjuster and attorney during the claim-handling process is never subject to the attorney-client privilege or work-product doctrine, *see* [#80 at 2, 6, 8], this court interprets Plaintiff's argument to be consistent with the applicable law that attorneys may communicate in a manner consistent with a claims adjuster despite being an attorney; in which case neither the attorney-client privilege nor work-product doctrine apply. Moreover, based on this court's *in camera* review of the withheld documents, it appears that Owners seeks to impose a categorical rule that the attorney-client privilege protects all communications between an attorney and claims adjuster because they "are actually shrouded by this ever-present threat of liability for bad faith claims handling." [*Id.* at 7]. But Owners provides no support for its proposition and its position is inconsistent with the applicable case law.

functions as a claims handler, the attorney-client privilege does not protect his communications with his client.

Owners identifies 16 groups of documents in its supplemental privilege log that it believes the attorney-client privilege protects. *See* [#94]. By Minute Order dated May 21, 2019, this court ordered that Defendant submit the withheld documents for *in camera* review. [3] Without disclosing any information the Parties may deem confidential, I consider these documents in turn. And contrary to Owners' argument that the communications are between a corporate representative and a corporate attorney regarding the corporation's exposure to liability resulting from the representative's scope of corporate employment, *see* [#80 at 6], this court finds that the record does not support the conclusion that these documents contain legal advice or Owners' strategy for defending against this civil action. Indeed, the first mention of a potential bad faith claim is June 6, 2018. Therefore, I conclude that the attorney-client privilege <u>does not</u> protect these documents.

***Owners 000001-2*** are electronic mail messages ("emails") alerting Mr. Torrey and Mr. Zeman to this civil action, assigning defense to Kristi Lush ("Ms. Lush"), and providing Mr. Olsen's claim number to Mr. Zeman. These communications contain no legal advice or request for legal advice, but rather are simply administrative in nature and thus are not subject to the attorney-client privilege even though they occurred after Mr. Olsen filed this civil action. *Sterling Const. Mgmt., LLC v. Steadfast Ins. Co.*, No. 09-CV-02224-MSK-MJW, 2011 WL 3903074, at *14 (D. Colo. Sept. 6, 2011) (holding that the attorney-client privilege does not protect communications between an attorney and client that are administrative in nature).

---

[3] Several pages of Owners' identified documents are images of the words "Auto-Owners Insurance." It is unclear what these images are, though they may be .jpeg images of Owners' logo attached to signature blocks for Owners' employees' email messages. In any case, these images do not contain information protected from disclosure by either the attorney-client privilege or the work product doctrine.

*Owners 000005* is an email from Mr. Zeman to Ms. Lush transmitting Ms. Lush a copy of Mr. Olsen's complaint in this civil action. While Ms. Lush is an attorney, Mr. Zeman does not seek legal advice. This communication is administrative in nature and is not subject to the attorney-client privilege even though it occurred after Mr. Olsen filed this civil action. *See id.*

*Owners 000007* is a duplicate copy of the email from attorney Andrew Lavin ("Mr. Lavin") alerting Mr. Torrey to Mr. Olsen's lawsuit and *Owners 000009-16* is a copy of Mr. Olsen's Complaint filed in this civil action. These communications are not subject to the attorney-client privilege even though they occurred after Mr. Olsen filed this civil action. *See id.*

*Owners 000017* are emails between Mr. Zeman and Ms. Lush regarding Mr. Olsen's lawsuit and Ms. Lush's response that she has no conflicts defending Owners in this civil action, and requesting certain underlying information. These communications are not subject to the attorney-client privilege even though they occurred after Mr. Olsen filed this civil action. *See id.*

*Owners 000019, 000021* are two emails from Mr. Zeman to Mr. Torrey. The emails from Mr. Zeman inform Mr. Torrey that Ms. Lush was performing a conflicts check as to representing Owners in this civil action and that Mr. Zeman did not have information on the amount of an unspecified lien for workers compensation despite having Mr. Olsen's claim information. Although Mr. Torrey is an attorney, there is no sought or exchanged legal advice from Mr. Torrey or suggestion that an unspecified workers compensation lien is the subject of any legal advice reflected in these documents. Thus, these communications are not subject to the attorney-client privilege even though they occurred after Mr. Olsen filed this suit.

*Owners 000126* is an email from Mr. Zeman to "Legal.ImageRight.Files" whom Owners identifies as Mr. Torrey in its supplemental privilege log. Though characterized as Mr. Zeman "expressing doubt over the validity of Plaintiff's claim and requesting legal advice regarding how

to proceed with his investigation of Plaintiff's claim consistent with Owners' obligations under Colorado law," this court cannot glean that information from the document itself. In the email, Mr. Zeman expresses doubt as to (presumably payment of) certain medical bills. He does not seek any advice from Mr. Torrey regarding either the bills or the change in reserve amount. Without more, this court concludes that this communication is not subject to the attorney-client privilege, especially given that this communication arose roughly five months prior to the initiation of this lawsuit.

*Owners 000128* is an email from Mr. Torrey to Mr. Zeman in response to Mr. Zeman's update on Mr. Olsen's claim. In the email, Mr. Torrey agrees with Mr. Zeman's request for prior medical records and seeks <u>factual</u> information from Mr. Zeman regarding Mr. Olsen's claim. Despite Owners' characterization of this email as "providing legal advice regarding how Mr. Zeman should proceed with his investigation of Plaintiff's claim consistent with Owners' obligations under Colorado law[,]" [#94 at 3], this court respectfully disagrees. First, Mr. Torrey references an email that he sent when the claim was first reported, but does not suggest that he is collecting this information because he intends to render legal advice on any issue. Second, the questions in and of themselves do not necessarily implicate legal advice. Without more, this communication appears consistent with an attorney conducting a factual investigation into Mr. Olsen's claim, *see W. Nat'l Bank of Denver*, 109 F.R.D. at 57, and occurred over two months prior to the initiation of this civil action. This court concludes that Owners has failed to carry its burden in demonstrating that this communication is subject to the attorney-client privilege.

*Owners 000133* is an email from Mr. Torrey requesting a status update on Mr. Olsen's claim given Mr. Olsen's recent underinsured motorist demand. Mr. Torrey inquires as to whether Mr. Zeman has all the requisite information to evaluate the demand, and notes that the policy

reserve is still a factor.[4]  From this, it is not readily discernible that Mr. Torrey was "requesting additional information regarding Mr. Zeman's claim handling to facilitate Mr. Torrey's legal advice regarding how Mr. Zeman should proceed with his investigation of Plaintiff's claim[.]" Rather, it appears that Mr. Torrey seeks an update on the status of Mr. Olsen's claim given the recent underinsured motorist demand.  This court concludes that Owners has failed to carry its burden in demonstrating that this communication is subject to the attorney-client privilege.

*Owners 000136* is a duplicate copy of an email from Mr. Lavin, later forwarded by Mr. Torrey, apprising certain individuals of this civil action, and *Owners 000138-45* is a copy of Mr. Olsen's Complaint in this civil action.  As before, these are not subject to the attorney-client privilege even though they occurred after Mr. Olsen filed this civil action.  *See Sterling Const. Mgmt.*, 2011 WL 3903074, at *14.

*Owners 000149* is an email from Mr. Torrey reflecting his understanding of the nature of Mr. Olsen's underinsured motorist demand, and inquiring from Mr. Zeman what his evaluation of the UIM claim is.  Mr. Torrey then discusses the information required to completely evaluate the demand, and asks if Mr. Zeman has the requisite information.  Nothing in this communication appears to be legal advice as Owners suggests, but rather it appears to be direction from Mr. Torrey as to what information Mr. Zeman needs to completely evaluate the demand and adjust the claim in the first instance.  This communication is not subject to the attorney-client privilege.

*Owners 000151* is an email from Mr. Torrey authorizing Mr. Zeman to proceed with obtaining an independent medical examination ("IME") to evaluate Mr. Olsen's underinsured motorist demand, and instructing Mr. Zeman to limit his consultation with local defense counsel to help facilitate the IME.  Mr. Zeman testified that "we need to get authority from our in-house

---

[4] *Owners 000126* appears to be Mr. Zeman's response to this email.  But even reading these emails together does not suggest that legal advice was sought or exchanged.

counsel in order to obtain an IME," [#70-4 at 25:18-21], and this communication occurred before Mr. Olsen filed this lawsuit. Thus, it fits squarely within the ordinary course of Owners' claim-handling process and is not subject to the attorney-client privilege. *See Weitzman*, 151 F.R.D. at 126.

*Owners 000161* is an email from Mr. Torrey requesting an update from Mr. Zeman as to the status of Mr. Olsen's insurance claim. This communication is not subject to the attorney-client privilege.

*Owners 000490-493* are two copies of an inter-office memorandum compiled by Mr. Zeman to Mr. Torrey concerning Mr. Olsen's insurance claim. The memoranda provide details regarding Mr. Olsen's insurance and claim, the accident underlying the insurance claim, and his medical bills and treatment, and seeks authority to give Mr. Olsen permission to settle with the at-fault carrier and permission to settle with Owners for $50,000. Contrary to Owners' assertion that Mr. Zeman seeks legal advice, Mr. Zeman makes no mention of any particular legal question. The memoranda are akin to an investigative file subject to discovery, and "the attorney-client privilege does not protect the results of a factual investigation conducted by counsel relating to the origination of an insurance policy and the validity of a claim." *Colorado Mills, LLC*, 2013 WL 1340649, at *3.

*Owners 000668* is an email from Mr. Torrey to Mr. Zeman requesting factual information as to the circumstances of Mr. Olsen's insurance claim, and also provides Mr. Zeman direction as to the information he will need to evaluate Mr. Olsen's underinsured motorist demand. This communication fits squarely within the claims-handling process and does not contain the exchange of legal advice, and thus this communication is not subject to the attorney-client privilege.

*Owners 000670* is an email from Mr. Zeman to Mr. Torrey that provides Mr. Torrey with an update on Mr. Olsen's claim. Mr. Zeman expresses some uncertainty about Mr. Olsen's medical records and diagnosis of chronic pain, and suggests that he seek prior medical records to help his evaluation. This communication is not subject to the attorney-client privilege.

*Owners 000684-689* are Mr. Zeman's claim notes. Despite Owners' assertion that these notes "document[] his communications with in-house counsel and outside counsel, summarizing his requests for legal advice regarding how to proceed with Plaintiff's claim[,]" these claim notes sparingly reference legal counsel (and only to make note that Mr. Zeman either spoke to or reached out to legal counsel) and otherwise summarize his receipt of medical records and his next steps in evaluating Mr. Olsen's claim. As mentioned, these claim notes reflect the first indication of concern regarding litigation or a bad faith claim on June 6, 2018; otherwise, all other previous entries simply reflect claims handling procedures. Most of these claim notes are not subject to the attorney-client privilege, as they reflect no request for nor provision of legal advice. Two entries, however, one dated June 12, 2018 at 5:38 p.m. EDT by Mr. Zeman and one dated June 8, 2018 at 10:55 a.m. EDT by Kevin R. Pung reflect legal advice and should be redacted prior to production.

### ii.    Work Product

As above, Owners argues that the work-product doctrine shields discovery of the withheld documents because Mr. Olsen seeks communications containing legal advice. *See* [#80 at 10]. But as discussed, the withheld documents do not contain legal advice or Owners' strategy for defending against this civil action.

Further, the mere retention of counsel is insufficient to establish a reasonable anticipation of litigation; at least one of our sister courts in this Circuit has held:

> But merely retaining counsel does not make documents thereafter prepared
> protectable under the work product doctrine. Retaining counsel to assist with an

investigation and evaluation of insured property [ ] hardly provides reason to find that Defendant has already shifted from its ordinary course of business in investigating a loss to now acting in anticipation of litigation.

*Quality Time, Inc. v. W. Bend Mut. Ins. Co.*, No. 12-1008-JTM-GLR, 2012 WL 5499555, at *7 (D. Kan. Nov. 13, 2012). While Owners is correct that "at some point an insurance company's activity shifts from claims evaluation to anticipation of litigation," *Hurtado*, 2011 WL 2533698, at *4, the majority of the communications discussed above do not consist of documents and tangible things prepared in the anticipation of litigation.

Nor does Owners provide adequate support for its assertion that it reasonably anticipated litigation "immediately" after Mr. Olsen filed his insurance claim based solely on Mr. Olsen's counsel who "boasts an active practice in bad faith breach of insurance contract cases." *Cf. Church Mutual Insurance Co.*, 2018 WL 2388555, at *5 ("Church Mutual provides no authority for (and this court's research did not yield any) its proposition that Mr. Coutu's 'reputation' as litigious made litigation reasonably anticipated" as of the date of the demand for appraisal). On the record before this court, it appears that the first concerns regarding litigation arose on June 6, 2018, after Owners receives a copy of the Complaint. Unlike other cases, the claim notes do not reflect any communications between Owners and Plaintiff's counsel, other than receiving a voice mail from the attorney on October 12, 2017. There is no indication after that point that Plaintiff's counsel made any demands to Owners or threatened Owners with any accusations of bad faith. Thus, I conclude that the work-product doctrine <u>does not</u> protect the withheld documents.

### C.    Conclusion

Based on the foregoing, I conclude that neither the attorney-client privilege nor the work-product doctrine shield the withheld documents from discovery by Mr. Olsen. Accordingly, I **GRANT IN PART and DENY IN PART** Plaintiff's Motion to Compel.

## II.       Defendant's Motion to Compel

### A.       Applicable Law

Rule 26(a)(1) of the Federal Rules of Civil Procedure directs parties to disclose certain information without awaiting a formal discovery request, including, *inter alia*, "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(iii). "Rule 26(a)(1) disclosures are designed to accelerate the exchange of basic information and help focus the discovery that is needed, and facilitate preparation for trial or settlement. . . . To that end, initial disclosures should provide an opposing party with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement." *Poitra v. Sch. Dist. No. 1 in the Cty. of Denver*, 311 F.R.D. 659, 663 (D. Colo. 2015) (internal quotation marks, citations, and brackets omitted). Rule 26(e)(1) provides that a party must supplement its disclosure(s) and response(s) in a timely manner if the party learns that the response(s) or disclosure(s) are incomplete or incorrect in some material respect, or by court order. Fed. R. Civ. P. 26(e)(1)(A)-(B).

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* This scope for discovery does not include all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26 effective December 1, 2015, purposefully removed that phrase. *See* Advisory Committee Notes to 2015 Amendments to Rule 26(b)(1) ("The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery."); *In re Bard Filters*

*Products Liability Litig.*, 317 F.R.D. 562, 563 (D. Ariz. 2016) [hereinafter *Bard*]. As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that the phrase had been used incorrectly by parties and courts to define the scope of discovery, which "might swallow any other limitation on the scope of discovery." *Bard*, 317 F.R.D. at 563 (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment).

The applicable test is whether the evidence sought is relevant to any party's claim or defense, and proportional to the needs of the case. *Id.* Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. In defining the scope of appropriate discovery, the Parties and the court are directed to consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

## B.    Application

Owners seeks to compel Plaintiff to produce information concerning the amount of non-economic and impairment damages Plaintiff seeks. *See* [#71 at 1-4]. In response to Owners' Interrogatory No. 3,[5] which requested a total amount in dollars for each category of damages sought, Plaintiff stated that it was for the jury to determine the specific amount of non-economic and impairment damages. *See* [#71-3 at 3]. Owners first argues that Rule 26(a)(1)(A)(iii) requires Mr. Olsen to disclose his computation of damages for each category sought, including non-

---

[5] Interrogatory No. 3 reads: "State the total amount of damages in dollars that **you** seek for each category of damages listed in **your** F.R.C.P. 26(a)(1)(C) disclosure (unless that disclosure already states a dollar amount for such category of damages)." [#71-2 at 4].

economic and impairment damages. *See* [#71 at 6-7; #84 at 4-5]. Relatedly, Owners argues that this information will foster settlement negotiations and help Owners prepare for trial. *See* [#71 at 8-9]. If not required under Rule 26(a)(1), Owners argues that Rule 26(b)(1) requires disclosure of these amounts because such information is relevant to Mr. Olsen's claims and proportional to the needs of the case. *See* [#71 at 7-8; #84 at 3].

Mr. Olsen argues that Rule 26(a)(1)(A)(iii) <u>does not</u> require the computation of non-economic and impairment damages that Defendant requests. *See* [#79 at 2]. According to Mr. Olsen, this is because such damages are not readily susceptible to calculation, albeit without the use of a "hedonic" damages expert whose testimony regarding said calculation is usually inadmissible. *See* [*id.* at 2-3, 6, 7-8]. Mr. Olsen further contends that it not possible to calculate non-economic and impairment damages now because the nature of these damages increases with the passage of time (to and including trial) and increase based on Owners' conduct in this litigation. *See* [*id.* at 5-6]. Finally, Mr. Olsen contends that he cannot supply this information without relying on advice of counsel that the attorney-client privilege and work-product doctrine protect, and that this information will not better facilitate settlement. *See* [*id.* at 5, 6-7].

*First*, I respectfully conclude that Rule 26(a)(1)(A)(iii) does not obligate Mr. Olsen to provide a calculation for <u>or</u> a total amount of his non-economic and impairment damages with his initial disclosures. While Owners is correct that some courts require a computation of such damages under Rule 26(a)(1)(A)(iii), or even disclosure of a total amount of such damages, *e.g.*, *Ellis v. State Farm Fire & Cas. Co.*, No. 07-CIV-410-RAW, 2008 WL 11389372, at *4 (E.D. Okla. May 23, 2008) (requiring computation); *Richardson v. Rock City Mech. Co., LLC*, No. CV 3-09-0092, 2010 WL 711830, at *3 (M.D. Tenn. Feb. 24, 2010) (requiring specific amount), I

respectfully disagree. This is because, to the extent Mr. Olsen seeks damages for <u>garden-variety</u>[6] emotional distress and permanent physical impairment, which appears true here, such damages are not typically suitable to a precise calculation. *See E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639 (E.D. Wash. 2011) ("[D]istrict courts have frequently denied motions to compel computations of emotional distress . . . damages because they are 'difficult to quantify' and are 'typically considered a fact issue for the jury.'" (collecting cases)).

Here, Mr. Olsen represents that he does not know the extent of those damages, and that they may vary as this matter proceeds. *Cf. Brower v. Sprouts Farmers Mkt., LLC*, No. 1:16-CV-01334 SMV-LF, 2017 WL 3397374, at *2 (D.N.M. Aug. 8, 2017) ("'[s]ince compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)[(A)(iii)].'" (brackets in original) (quoting *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000))). Nor do Plaintiff's pleading or other filings suggest that his non-economic and impairment damages relate to discrete, quantifiable, and/or severe injuries. *See Fox v. Gates Corp.*, 179 F.R.D. 303, 307 (D. Colo. 1998) (explaining that emotional distress goes beyond garden-variety if the plaintiff asserts a separate claim for infliction of emotional distress, alleges a specific mental or psychiatric disorder, or claims unusually severe emotional distress). Further, Mr. Olsen indicates that, unless the court compels a calculation of his non-economic and impairment damages, he does not intend to call an expert witness to testify to the quantity of such damages. *See McCrary v. Country Mut. Ins. Co.*, No. 13-CV-507-JED-PJC, 2014 WL 314777, at

---

[6] Damages for garden-variety emotional distress are "devoid of any medical treatment or physical manifestation," *Parris v. Pappas*, 844 F. Supp. 2d 271, 279 n.9 (D. Conn. 2012), and "include damages for mental anguish, mental distress, emotional pain, anxiety, embarrassment, humiliation, career disruption, and inconvenience foreseeably flowing from defendant's actions[,]" *Kankam v. Univ. of Kan. Hosp. Auth.*, No. 07-2554-KHV, 2008 WL 4369315, at *4 (D. Kan. Sept. 23, 2008).

*2 (N.D. Okla. Jan. 28, 2014) (stating that if the plaintiffs intended to "use expert testimony to support their emotional distress claim, they must provide Defendant with a computation of these damages."); *but cf. Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1245-46 (10th Cir. 2000) (noting in *dicta* that federal courts to consider expert testimony on hedonic damages, i.e., the value of human life, have "unanimously held quantifications of such damages inadmissible [sic]."). And the weight of authority nationally appears to lean away from requiring such disclosures pursuant to Rule 26(a)(1) due to their very nature. *See, e.g., Williams*, 218 F.3d at 486 n.3; *Odom v. Thompson*, No. 5:13-CV-211-TBR, 2017 WL 6522072, at *3 (W.D. Ky. Dec. 19, 2017); *De Varona v. Disc. Auto Parts, LLC*, No. 12-20714-CIV, 2012 WL 2334703, at *2 (S.D. Fla. June 19, 2012) (collecting cases); *Bowers v. Am. Heart Ass'n, Inc.*, No. 1:06-CV-2989-CC, 2008 WL 11407360, at *3 (N.D. Ga. Dec. 2, 2008); *United Steelworkers Local 12-369 v. United Steel*, No. CV-07-5053-RHW, 2009 WL 10676178, at *1 (E.D. Wash. Mar. 16, 2009); *Santos v. Farmers Ins. Exch.*, No. 07-11229, 2008 WL 2937778, at *2 (E.D. Mich. July 24, 2008); *Estate of Gonzalez v. Hickman*, No. 05-00660, 2007 WL 3237635, at *4 (C.D. Cal. June 28, 2007) (collecting cases).

Under these circumstances, this court will not compel a further response to Interrogatory No. 3. *See Hancock v. Greystar Mgmt. Servs., L.P.*, No. CIV-15-1095-R, 2016 WL 2889084, at *1 (W.D. Okla. May 17, 2016) (denying a motion to compel where the plaintiff failed to provide an amount of damages sought for emotional distress because she need not provide such an amount). By the same token, Mr. Olsen appears to be forfeiting his opportunity to request a specific amount of non-economic and impairment damages from the jury. *De Varona*, 2012 WL 2334703, at *2. To the extent that he intends to seek a specific amount, then he <u>shall</u> disclose this figure to Owners or risk preclusion from doing so at trial under Rule 37(c)(1) of the Federal Rules of Civil Procedure. *See Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 282 (D. Minn. 2007)

("However, if plaintiffs do intend to suggest a specific amount to the jury for emotional distress damages, plaintiffs shall be required to provide to defendants the basis for this figure.").

*Second*, I respectfully conclude that Rule 26(a)(1) does not require disclosure of a specific amount of non-economic and impairment damages to facilitate settlement of this matter. While this court agrees with Owners that the purpose of Rule 26(a)(1) is to "provide an opposing party with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote <u>settlement</u>," *Poitra*, 311 F.R.D. at 663 (emphasis added) (brackets and internal quotation marks omitted), this, alone, does not justify compelling Mr. Olsen to provide a specific amount for non-economic and impairment damages. As Mr. Olsen notes, the parties remain free to engage in good faith settlement negotiations, even if Mr. Olsen does not provide a specific amount for such damages. Though it encourages meaningful disclosure and settlement discussions, this court finds that Owners can likely discern the range of non-economic damages, if not the precise amount, from comparing a settlement demand with the calculation of economic damages that have been provided.

*Third*, I respectfully conclude that Rule 26(b)(1) does not justify compelling Mr. Olsen to provide a total amount for his non-economic and impairment damages. To be sure, information concerning the nature of Mr. Olsen's non-economic and impairment damages would be relevant to his claims and likely proportional to the needs of the case. *Cf. Maldonado v. Union Pac. R. Co.*, No. 09-1187-EFM, 2010 WL 4822570, at *2 (D. Kan. Nov. 22, 2010) ("Information concerning plaintiff's work history is relevant to his 'loss of earning capacity' and 'economic and non-economic' damages."). But given this court's conclusion above—that Rule 26(a)(1)(A)(iii) does not require either a computation or total amount of garden-variety non-economic damages— compelling Mr. Olsen to provide a specific amount of such damages is not proportional to the

needs of the case. *Cf. Wal-Mart Stores, Inc.*, 276 F.R.D. at 639 ("[D]istrict courts have frequently denied motions to compel computations of emotional distress and punitive damages because they are 'difficult to quantify' and are 'typically considered a fact issue for the jury.'" (collecting cases)).

Nor is this court convinced that Mr. Olsen confessed this issue in his Response, as Owners suggests, such that this is reason enough to grant Owners' Motion to Compel. *See* [#84 at 3 ("Because Plaintiff ignored Owners' interrogatory, he has confessed the motion as to that separate and independent basis for granting a motion to compel, which should be granted.")]. Rule 26(b)(1) allows for discovery of "any <u>nonprivileged</u> matter." Fed. R. Civ. P. 26(b)(1). Though Mr. Olsen does not expressly refute Owners' Rule 26(b)(1) argument, he does argue that disclosure of a computation or total amount of his non-economic and impairment damages would require disclosure of "advice of his counsel" regarding the value of his claims that is subject to the attorney-client privilege. *See* [#79 at 5]; *see also* [*id.* at 6 (arguing that a "decision regarding whether to request specific amounts for noneconomic damages . . . is typically a decision made by the plaintiff and his or her attorney at the time of trial.")]. While this court expresses no opinion as to the propriety of Mr. Olsen's argument, it cannot conclude that he conceded the issue. Accordingly, this court concludes that Rule 26(b)(1) does not require compelling Mr. Olsen to provide a total amount for his non-economic and impairment damages.

### C. Conclusion

Based on the foregoing, I conclude that neither Rule 26(a)(1) nor 26(b)(1) require Mr. Olsen to produce a total amount for his non-economic and impairment damages. Accordingly, I **DENY** Defendant's Motion to Compel, including Defendant's request for reasonable expenses

and attorney's fees incurred in filing the motion.[7]  In so ruling, this court does not pass on, nor does it excuse, any obligation by Mr. Olsen under the Federal Rules of Civil Procedure and discovery in this matter to disclose information and documents that he intends to rely upon in requesting non-economic damages from the jury.

## CONCLUSION

Therefore, **IT IS ORDERED** that:

(1)　　Plaintiff's Motion to Compel [#70] is **GRANTED IN PART and DENIED IN PART**;

(2)　　Owners is **COMPELLED** to produce the withheld documents identified in its supplemental privilege log, consistent with this Order and notwithstanding the stay of discovery recently entered, and shall do so **on or before June 19, 2019, and Plaintiff will preclude counsel subject to the pending Motion to Disqualify from reviewing such documents until and unless the court rules in his favor on such motion**;

(3)　　Defendant's Motion to Compel [#71] is **DENIED**; and

(4)　　Defendant's Motion to Request Oral Argument on Plaintiff's Motion to Compel Disclosure of Communications with Attorney Mr. Torrey (ECF NO. 70) [#95] is **DENIED**.

DATED:  June 17, 2019　　　　　　　　　　BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[7] But should Mr. Olsen seek to quantify his non-economic and impairment injuries and request a specific amount from the jury, he <u>shall</u> produce this figure to Owners.