IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 18-cv-01665-RM-NYW

KENNETH OLSEN,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,
An Ohio corporation,

    Defendant.

---

# ORDER

---

This is an uninsured/underinsured motorist ("UM/UIM") insurance dispute arising from a car accident between Plaintiff Kenneth Olsen ("Olsen" or "Plaintiff") and a third-party, at-fault driver. At issue now are Defendant Owners Insurance Company's ("Owners" or "Defendant") Motion for Partial Summary Judgment (ECF No. 193) on Olsen's claim for unreasonable delay or denial of an insurance benefit under the Colorado statute and his claim for common law bad faith and Owners' Motion to Exclude Testimony of Jeremy Sitcoff, Esq. (ECF No. 192) (the "Motions").[1] The parties filed responses and replies. The Motions are ripe for resolution. Upon review of the Motions, relevant parts of the court record, and the applicable statutes and case law, and being otherwise fully advised, the Court finds and orders as follows.

**I.    BACKGROUND**

Olsen was injured in a car accident on April 23, 2017, when he was driving his employer's van and was struck by another vehicle. It is undisputed that the accident was caused

---

[1] The Parties also each submitted Motions in Limine which the Court will address in a separate Order.

by the other driver. Following the accident, Olsen went to an emergency room and was evaluated for injuries. At the time, Olsen complained of neck pain and the emergency department concluded that, while he had no broken bones, he appeared to have suffered whiplash and his muscles were tender and in spasm. A later neurobehavioral examination confirmed a diagnosis of post-concussive syndrome as well as certain other conditions unrelated to the accident.

Olsen continued to report that he suffered from migraines, pain, vision and balance problems as well as certain posttraumatic stress issues such as nightmares. He therefore underwent neuropsychological testing to determine "the presence and severity of any neurocognitive symptoms resulting from the traumatic brain injury." (ECF No.195-3.) Following that examination, the doctor concluded both that Olsen suffered from post-concussion syndrome and anterograde amnesia, and that there was likely a psychological component to his complaints of pain.

At the time of the accident, Olsen's employer maintained an insurance policy, including UM/UIM coverage, with Owners. Olsen obtained legal representation who contacted Owners on his behalf on August 18, 2017. In a letter Olsen informed Owners that the at-fault driver might not have had adequate liability coverage and that he was placing Owners on notice of a possible claim on the UM/UIM policy coverage. Owners acknowledged the notice the same day. In its acknowledgement letter Owners also requested additional information, including "narrative reports from all the doctors who treated [Olsen], such narratives to include a diagnosis and prognosis of injuries incurred along with the doctor's medical report." The letter continued, "If there is [sic] lost wages to be presented, we require a statement from the employer indicating itemization of hours/days lost from work and their hourly pay rate. We further require a

statement from the doctor that the individual(s) was unable to work during the time the lost wages are being filed for." Finally, Owners required a complete itemization of all of Olsen's medical bills and informed him that it might request additional information at a later date before paying a claim.

The at-fault driver had a $25,000 insurance policy from State Farm. Olsen informed Owners, on September 26, 2017, of the at-fault driver's policy limits and that his damages "far exceeded" $25,000 and that he therefore would be pursuing a UM/UIM claim. Owners gave Olsen permission to settle for the policy limits, which he did. Thereafter, the parties continued to exchange letters requesting and providing additional information. On November 27, 2017 Olsen sent additional medical records to Owners and requested that it review the documents and tender any benefits owed within 30 days or to let him know the reason for the delay. On December 28, 2017, Owners responded, informing Olsen that it was still reviewing the bills from one of the providers to determine if they were "warranted." On February 8, 2018, after having Olsen's file reviewed by its in-house medical team, Owners sent Olsen an email requesting medical records for the past 5-7 years to determine whether Olsen's report of chronic pain was related to the accident or had another cause. Olsen sent those records on March 28, 2018. Olsen also continued to send new medical bills to Owners and, on May 4, 2018, sent Owners his lost wage summary. To date, Owners has not paid any benefits to Olsen.

On May 30, 2018, Olsen filed suit against Owners in Colorado State Court. (ECF No. 3.) Olsen made three claims for relief: (1) breach of contract; (2) statutory unreasonable denial and delay of benefits under section 10-3-1116, C.R.S.; and (3) common law bad faith. Owners then removed the case to this Court.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

### B. Expert Testimony

Federal Rule of Evidence 702 ("Rule 702") requires a district court to ensure that an expert's testimony is admitted only if it is reliable and relevant. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). To do so, the court follows three steps.

The court must decide "whether the proffered expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *Bill Barrett Corp*, 918 F.3d at 770 (quoting Rule 702).

If the expert is sufficiently qualified, the court "'must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*.'" *Id.* (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). In doing so, the court considers (1) whether "the testimony is based on sufficient facts or data"; (2) whether it "is the product of reliable principles and methods"; and (3) whether "the expert has reliably applied the principles and methods to the facts of this case." Fed. R. Evid. 702(b)-(d).

Finally, the court must determine whether the "proposed testimony is sufficiently 'relevant to the task at hand.'" *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (quoting *Daubert*, 509 U.S. at 597). The court evaluates whether the evidence or testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). The trial court has discretion to determine "*how* to perform its gatekeeping function under *Daubert*." *Bill Barrett Corp.*, 918 F.3d at 770 (emphasis in original). A *Daubert* hearing is not mandated. *Id.*

### III. ANALYSIS

#### A. Summary Judgment

Owners moves for summary judgment on Olsen's two claims for the unreasonable delay or denial of benefits—one under the Colorado statute and one under the common law. In support of its motion, Owners makes four arguments. First, Owners argues that its conduct was reasonable as a matter of law—that it reasonably investigated and evaluated Olsen's claim. Second, Owners claims that Olsen failed as a matter of law to establish that Owners acted in bad faith with regard to the portion of his claim that addresses non-economic damages. Third, Owners argues that Olsen failed as a matter of law to show that Owners unreasonably delayed

payment of the part of his claim for lost wages.  Finally, Owners asserts that Olsen lacks admissible evidence to prove industry standards in order to establish that Owners breached those standards.  The Court is ultimately unpersuaded by these arguments, which will be addressed in turn.

Under the Colorado statute, an insurer may not unreasonably delay or deny a claim for benefits.  §§ 10-3-1115, -1116, C.R.S.  "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment for a covered benefit without a reasonable basis for that action."  § 10-3-1115(2).  Unlike in the context of a common law insurance bad faith claim, an insurer cannot rely on the mere fact that the claim was fairly debatable in order to prove that it acted reasonably as a matter of law.  *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 989-90 (Colo. App. 2015).  "If a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable' (i.e., if reasonable minds could disagree as to the coverage-determining facts or law), then this weighs against a finding that the insurer acted unreasonably."  *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010).  "[F]air debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case."  *Id.* at 1218.  Rather, "the question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim."  *Thompson v. State Farm Mutual Auto. Ins. Co.*, 457 F.Supp.3d 998, 1003 (internal citations omitted).  In addition, in the context of a statutory claim, an insurer cannot withhold payment of an undisputed part of a claim "simply because other portions of an insured's UIM claim remain disputed."  *State Farm Mut. Auto. Ins. Co. v. Fisher*, 2018 CO 39, ¶ 24, 418 P.3d 501, 506.

In order to prove a common law claim, a plaintiff must prove not only that the insurer

acted unreasonably, but also that "the insurer either knowingly or recklessly disregarded the validity of the insured's claim. This standard of care 'reflects a reasonable balance between the right of an insurance carrier to reject a non-compensable claim submitted by its insured and the obligation of such carrier to investigate and ultimately approve a valid claim.'" *Goodson v. American Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004) (quoting *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985)). Thus, a party "who asserts that an insurer has failed to pay a claim in bad faith must establish that the insurer acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim." *Savio*, 706 P.2d at 1274.

In both types of claims, "[t]he reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards." *Thompson*, 457 F.Supp.3d at 1003. Industry standards can be proven through both expert testimony and through reference to Colorado law. *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 891 (10th Cir. 2016). Under Colorado law, the insurer has a duty to reasonably investigate an insured's claim "based upon all available information." *Id.* (quoting § 10-3-1104(1)(h)(IV), C.R.S.). To comply with this duty, the insurer "must 'promptly and effectively communicate with anyone it was reasonably aware had . . . information pertaining to the handling of [a plaintiff's] claim.'" *Id.* (quoting *Dunn v. Am. Family Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010)). An insurer is, however, "afforded wide latitude in its ability to investigate claims and to resist false or unfounded efforts to obtain funds." *Brodeur v. American Home Assur. Co.*¸169 P.3d 139, 152 (Colo. 2007).

1. **Reasonableness**

In this case, Owners argues that it reasonably investigated and evaluated Olsen's claim and therefore the bad faith claims must fail as a matter of law. (ECF No. 193, p.3.) Owners

7

asserts that there was substantial medical evidence casting doubt on the veracity of Olsen's claims. Specifically, it point primarily to a number of insurance claim forms, apparently completed by a doctor's practice, and to the report prepared by the doctor who performed the neuropsychological evaluation of Olsen. Owners also points out that the claims adjuster requested that a nurse consultant review Olsen's file in order to determine whether the treatments he had received were, in fact, attributable to the car accident.

Olsen notes, on the other hand, that he submitted medical records repeatedly over the roughly one-year period during which Owners was evaluating his claim. He notes that, at no time did the adjuster seek information from sources beyond Olsen himself—at no point did the adjuster seek to review the police report from the accident, review property damage photographs, request an authorization from Olsen to obtain additional medical records from his providers, or seek to speak to the other driver or the police who investigated the accident. (ECF No. 199, p.5.) As Olsen also points out, in the adjuster's deposition testimony he conceded that he did not review all of the records as they came in nor did he follow up with Olsen's attorney to inform him of the claim's status every 30 days, as required under Colorado regulations. (ECF No. 199-2.) The adjuster conceded that he received the report about Olsen's claim from the nurse evaluator in late December, 2017, but did not note any review of that evaluation until February. The report the adjuster received from the nurse indicated that at least some of Olsen's injuries probably stemmed from accident—including some of his neck pain. (ECF No. 195-4.) Yet Owners did not pay any benefit to Olsen.

Construing the evidence in the light most favorable to the non-moving party, as the Court must, it concludes that a reasonable juror could conclude that Owners acted unreasonably in the way it handled the claim—the adjuster apparently failed to do much independent investigation

beyond requesting that a nurse review Olsen's medical records, the claim file lacked required documentation, and Owners failed to communicate as required with Olsen and his counsel. Owners presents no evidence of industry standards to support an argument that its conduct in this case complied with those standards and was therefore reasonable.

The Court is not otherwise persuaded by Owners' assertion that the cause of all of Olsen's injuries was fairly debatable based on the insurance claim forms and the neuropsychological evaluation. The forms cited appear to be forms submitted by the doctor's office to Olsen's health insurer, in order to receive payment for the treatment provided to Olsen. It is not at all clear to the Court that these forms were completed by doctors, let alone that they were intended to be treated as definitive medical records. The evaluation is more persuasive, but again, construing it in the light most favorable to Olsen, while the doctor did say that there is likely a psychological component to some of Olsen's symptoms, he also noted that Olsen suffers from post-concussion syndrome and anterograde amnesia. (ECF No. 195-3.) Furthermore, Owners offers no authority for the proposition that, if some of Olsen's symptoms were psychological in nature, that they would not be compensable injuries if they resulted from the accident. Based on the evidence presented, the Court concludes that a reasonable jury could find that Owners' conduct was not reasonable, and therefore a genuine issue of material fact remains for a jury.

### 2. Non-economic Damages

Owners' next argument is that, as a matter of law it had no duty to pay Olsen's claim for non-economic damages because non-economic damages are necessarily subjective. Owners also notes that Olsen argued, in opposition to Owners' Motion to Compel him to disclose the amount of non-economic damages that he is seeking, that Olsen made precisely that argument—that such

damages are necessarily subjective and a question for the jury. The Court considers this question to be a close one. On the one hand, Olsen seems to take a different position in his response to this Motion (ECF No. 199) than the one he took in his response to the Motion to Compel (ECF No. 79). On the other hand, the same is true of Owners—in its Reply in support of its Motion to Compel it stated that such damages, even those that will accrue in the future, can be ascertained and computed "as occurs in virtually every personal injury trial." (ECF No. 84.) Now Owners asserts that, as a matter of law it could not have determined the value of Olsen's non-economic damages at the time it was evaluating his claim. (ECF No. 193.) The Court concludes that Owners' position proves too much—if the value of non-economic damages is always fairly debatable then insurers would never have any obligation to pay those damages prior to litigation. That cannot be the case. In addition, in this particular instance, the claim adjuster admitted in his deposition that he had, in fact, assigned values to Olsen's non-economic damages. (ECF No. 199-2, p. 79.) Specifically, he valued the non-economic damages at $30,000. While the Court agrees that Owners is free to argue to the jury that the proper valuation of the non-economic damages was fairly debatable, the Court concludes that, when viewed in the light most favorable to Olsen, a reasonable jury could conclude that the value of Olsen's non-economic damages was determinable, and that Owners acted unreasonably in failing to pay them.

### 3. Lost Wages

Owners next argues that Olsen has failed, as a matter of law, to show that it unreasonably delayed payment of his claim for lost wages. Specifically, Owners notes that Olsen, himself, failed to provide timely information in support of his wage-loss claim until May 4, 2018, just over three weeks before filing suit in this case. It argues that, because only 26 days elapsed between its receipt of the information and the instigation of litigation, as a matter of law it did

not act in bad faith. It reiterates that it is entitled to have an opportunity to investigate the claim before making any payment.

Olsen argues that Owners failed to investigate and failed to adequately communicate with him, demonstrating that it was not acting in good faith. He has also pointed out that insurance companies are obligated to continue acting in good faith, even after litigation has been instigated. *See Southerland v. Argonaut Ins. Co.*, 794 P.2d 1102, 1106 (Colo. App. 1990). And the parties do not dispute that Owners took no further actions to investigate or resolve Olsen's claim after he filed suit. As the Colorado Court of Appeals noted in *Southerland*, while evidence of instances of bad faith taking place after a complaint has been filed do not "state a new cause of action, change the theory of the action, or cure a defective pleading," those instances are "relevant as evidence of defendant's habitual pattern in dealing with plaintiff." *Id.*

Considering the evidence in the light most favorable to Olsen, a reasonable jury could conclude that Owners failed to adequately investigate Olsen's wage-loss claim and that, once it received the required documentation it still failed to take action and has, to this day, taken no action. Therefore, the Court concludes that there is sufficient evidence for the claim to survive the motion for summary judgment.

### 4. Proof of Industry Standards

Owners' final argument for summary judgment is that Olsen lacks admissible evidence proving industry standards in order to establish that Owners breached its duties in this case. This argument is, in part, based on the assumption that the Court will exclude the testimony of Olsen's expert, Jeremy Sitcoff. That question is addressed further in the section of this Order that follows. Even assuming, however, that the Court were to grant the motion to preclude Sitcoff's testimony, the Court concludes that Olsen can offer proof of industry standards through

other witnesses. For example, the claims adjuster in this case, who was questioned at length about industry standards during the course of his deposition. Where, as here, other witnesses can testify to industry standards and, moreover, Olsen is relying on statutory violations to demonstrate the standard of care, the Court concludes that there is sufficient evidence to create a genuine issue of material fact for the jury. *See Giampapa v. American Family Mut. Ins. Co.*, 919 P.2d 838, 842 (Colo. App. 1995) (concluding that the plaintiff presented adequate evidence of industry standards because he relied on statutory provisions for that purpose).

### B. Defendant's Motion to Preclude Testimony of Jeremy Sitcoff

Owners next asks the Court to exclude the opinion testimony of Olsen's expert. Jeremy Sitcoff. (ECF No. 192.) Owners does not appear to contest Sitcoff's credentials nor his methodology in reaching his conclusions. Even had it done so, however, the Court concludes that Sitcoff is well credentialed and has applied his knowledge appropriately to support his opinions.

Rather, Owners objects to the fact that Sitcoff's expertise is derived from his work as an attorney and, therefore, would serve only to usurp the roles of the Court and the jury by opining on the applicable law and on the ultimate issue in the case. The Court agrees with Owners in part.

The Court does not agree that all of Sitcoff's opinions are merely a recitation of legal duties of insurers as developed through statute and case law. Rather, he opines on a number of questions relevant to the jury's decision in this case. For example, he opines that under industry standards, an insurer (1) must conduct an investigation to determine whether it owes benefits, and to do so it must investigate the accident as well as the extent of the insured's injuries and other damages; (2) should pay benefits when liability has become reasonably clear; (3) must

reasonably and promptly explain the factual basis for any denial of benefits; (4) is obligated to consider the interests of its insured to the same extent it considers its own interests; and (5) is obligated to pay amounts that the insured would otherwise be legally entitled to collect from the at-fault driver who was either uninsured or underinsured. The fact that Sitcoff developed his knowledge of industry standards through his career litigating insurance cases does not somehow render those opinions "legal opinions" when a non-attorney expert could give the same opinions without problem.

The Court does agree with Owners, however, that Sitcoff cannot properly draw legal conclusions by applying law to facts. *Baumann v. American Family Mut. Ins. Co.*, 836 F.Supp.2d 1196, 1201 (D. Colo. 2011).

> "The line between permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field.

*United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). While it is improper for an expert witness to define the legal parameters of a case for the jury or "rephrase the determinative legal standard" in a case, an expert may refer to statutory and regulatory provisions that "may illustrate what constitutes 'reasonable' conduct in the insurance industry." *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F.Supp.3d 1170, 1184 (D. Colo. 2018).

To the extent that Sitcoff frames his opinions in his report as legal conclusions, determining that Owners violated section 10-3-1104 or that Owners' conduct violated the prohibitions set out in sections 10-3-1115 and -1116, C.R.S., the Court GRANTS Owners' Motion to Exclude his testimony. Sitcoff may not testify as to whether, in his opinion, Owners'

conduct was unreasonable as a matter of law or that it was in violation of any statute. *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 929 (D. Colo. 2017). He can, however, explain how claims are generally handled in the insurance industry, including by discussing the standards for timely investigations, reservations of rights, and coverage decisions, and can explain the facts that he believes demonstrate that Owners departed from those standards or fell short of them. *See Baumann*, 836 F.Supp.2d at 1202; *O'Sullivan*, 233 F.Supp.3d at 928-29. Therefore, in all other respects, Owners' Motion to Exclude is DENIED.

IV. **CONCLUSION**

Accordingly, it is **ORDERED**

(1) That Owners' Motion for Partial Summary Judgment (ECF No. 193) is DENIED; and

(2) That Owners' Motion to Exclude Testimony of Jeremy Sitcoff, Esq. (ECF No. 192) is GRANTED IN PART AND DENIED IN PART.

DATED this 25th day of May, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge